UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOELVIS RODRIGUEZ ARIAS,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, *et al.*,<br><br>Respondents. | Case No. C26-2860-MLP<br><br>ORDER |

Petitioner Yoelvis Rodriguez Arias is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting his redetention on July 14, 2026, without first receiving notice and a hearing, violated his due process rights under the Fifth Amendment. (*See generally* dkt. # 1.) He seeks immediate release from custody and an order permanently enjoining his future redetention absent prior written notice and a hearing. (*Id.* at 10.) Respondents filed a return (dkt. # 6), together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Andre Ouk (dkt. # 7) ("Ouk Decl.") and their counsel Lawrence Van Daley (dkt. # 8) ("Van Daley Decl."). Petitioner filed a traverse in reply (dkt. # 11), together with supporting declarations from

Petitioner (dkt. # 9) ("Arias Decl.") and Petitioner's spouse, Yordania Juan Salcedo (dkt. # 10) ("Salcedo Decl.").

Having considered the parties' submissions, the governing law, and the balance of the record, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a citizen of Cuba who entered the United States near Del Rio, Texas, on approximately July 17, 2021. (Dkt. # 1, ¶ 19.) DHS encountered Petitioner on or around July 20, 2021, issued him a Notice to Appear ("NTA") for removal proceedings in Immigration Court, and released him on his own recognizance. (Dkt. # 1, ¶ 19, Exs. A-B; Ouk Decl., ¶¶ 3-4.) Under his Order of Release on Recognizance ("OREC"), Petitioner was not authorized to change his place of residence without first obtaining written permission from ICE, and was ordered to report to ICE in Miramar, Florida, on September 20, 2021. (Dkt. # 1, Ex. B; Ouk Decl., ¶ 4.)

On September 20, 2021, Petitioner attended his scheduled check-in with ICE in Florida. (Dkt. # 1, ¶ 20; Arias Decl., ¶ 3.) At this check-in, Petitioner updated his address with ICE, as he intended to relocate to Kennewick, Washington, where extended family offered him and his spouse a residence. (*Id.*) ICE granted Petitioner's request to change his address, and Petitioner subsequently attended future ICE appointments at the Kennewick ICE office. (*Id.*)

The parties dispute the following facts surrounding Petitioner's alleged in-person check-ins in San Diego, California. Respondents attest that on November 3, 2023, Petitioner reported to a San Diego Enforcement and Removal Operations ("ERO") office in-person and was scheduled to report again in-person on April 9, 2024. (Ouk Decl., ¶ 5.) According to Respondents, Petitioner did not report for the April 9, 2024, check-in. (*Id.*, ¶ 6.) Petitioner disputes these facts,

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

attesting that he has never been to California nor had any scheduled ICE check-ins there. (Arias Decl., ¶ 6.) Petitioner's wife similarly attests that neither she nor her husband have ever been to California, and "were shocked and confused to hear that [Petitioner] has been accused of attending an ICE appointment in San Diego and then missing subsequent appointments there." (Salcedo Decl., ¶ 4.)

Petitioner's immigration case was transferred to the Seattle Immigration Court after his relocation to Kennewick. (Dkt. # 1, ¶ 21; *see* Van Daley Decl., ¶ 2, Ex. 1.) Petitioner attended in-person hearings there on September 10, 2024, and January 15, 2025. (Dkt. # 1, ¶ 21.) It is Petitioner's understanding that his next hearing, scheduled for December 2028, was cancelled, and no further hearing date set. (*Id.*) Respondents agree that Petitioner was scheduled to appear at a merits hearing before an Immigration Judge in Seattle on December 7, 2028, but do not address whether that hearing was cancelled after Petitioner's proceedings were transferred to Tacoma. (*See* Ouk Decl., ¶ 8.) Petitioner also attests that around the time of his first Seattle Immigration Court hearing in September 2024, ICE told him he had no further appointments, and since that time he has not received notice of any ICE appointments or other requests for contact. (Dkt. # 1, ¶ 20; Arias Decl., ¶ 4.)

While released, Petitioner timely applied for asylum, received a work permit and social security card, and paid the annual asylum application fee. (Dkt. # 1, ¶ 22; *see also id.*, Exs. C-D.) Petitioner continued to maintain a permanent address in Kennewick, although he and his spouse and daughter later lived temporarily in Portland where Petitioner worked under his valid work permit. (Dkt. # 1, ¶ 23.) Petitioner attests that, "to the best of [his] memory," he confirmed with his prior attorney that he did not need to change his address with ICE because he continued to

maintain his permanent residence in Kennewick where he received mail and lived with his extended family. (Arias Decl., ¶ 9.)

On July 14, 2026, DHS arrested Petitioner in the Portland, Oregon area while he was working, and revoked his OREC for failure to comply with conditions of release. (Dkt. # 1, ¶ 25; Ouk Decl., ¶ 7.) Respondents state that ICE officers discovered Petitioner was living in Oregon but had failed to notify ICE of his address change. (Ouk Decl., ¶ 7.) Petitioner did not receive notice or a hearing before he was redetained. (Dkt. # 1, ¶ 26; dkt. # 6 at 3, 6-7.) Petitioner was transferred to the NWIPC, where he remains detained. (Ouk Decl., ¶¶ 7, 10.) Officer Ouk asserts Petitioner does not yet have a hearing scheduled with the Tacoma Immigration Court. (*Id.*, ¶ 8.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A Petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A Petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges his July 14, 2026 redetention as violative of his due process rights when assessed under the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (Dkt. # 1, ¶¶ 27-30, 34-37; dkt. # 11 at 11-14.) Respondents contend Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2) and did not require notice or a hearing prior to his redetention because Petitioner is an applicant for admission who was processed near the border after an unlawful entry. (Dkt. # 6 at 2, 6.)

**A. Statutory detention authority**

The Court must first determine which statutory provision governs Petitioner's detention, as that determination affects the procedures the government must follow. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (Dkt. # 6 at 3-4.) Petitioner disagrees but argues that due process would protect his liberty interest from detention regardless of whether § 1225(b) or § 1226(a) provides the statutory basis. (Dkt. # 11 at 2-3, 5-6.) The record supports the conclusion that Petitioner's detention falls under § 1226(a).

Petitioner was initially encountered near the border in 2021, but for the last five years has been present in the United States on an OREC authorizing his release under Section 236 of the INA, which is codified at 8 U.S.C. § 1226. (Dkt. # 1, Ex. B.) He was not arrested until July 2026, in Portland, Oregon, at which time the DHS served Petitioner with a Notice of Custody Determination issued "pursuant to the authority contained in Section 236 of the [INA.]" (Van Daley Decl., ¶ 2, Ex. 3.) Given the Ninth Circuit's interpretation of §§ 1225(b) and 1226(a) (*see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164-65 (9th Cir. 2026)), § 1225(b) is not the applicable framework here because Petitioner was redetained within the interior of the United States after having been conditionally released into the United States years prior. Respondents' argument that Petitioner's later Oregon arrest does not erase his "original classification and processing under 8 U.S.C. § 1225" (dkt. # 6 at 7) is an unpersuasive effort to recharacterize Petitioner's detention that is unsupported by the record and this Circuit's precedent. Accordingly, and consistent with its prior decisions as acknowledged by Respondents (*see id.* at 5), this Court finds that Petitioner's detention falls under § 1226(a). The Court now turns to Petitioner's due process claim.

**B. *Mathews* and Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp.3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Both parties assess the lawfulness of Petitioner's July 14, 2026 redetention through the *Mathews* framework but reach opposite conclusions. (Dkt. # 6 at 7-11; dkt. # 11 at 11-14.)

*1. Private Interest*

Freedom from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). And "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Here, the parties agree Petitioner possessed a liberty interest in his continued release. (Dkt. # 6 at 8; dkt. # 11 at 11.) Respondents claim this interest is not absolute and was "conditional on reporting and on obtaining written permission before changing residence." (Dkt. # 6 at 8.) Petitioner both disputes the facts underlying Respondents' argument, and counters that Respondents' argument fail under *Ramirez Tesara*, where "once established, [a] Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that

comport with due process . . . such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." (Dkt. # 11 at 4-5, 11 (citing *Ramirez Tesara*, 800 F. Supp. 3d 1130 at 1136).)

It is undisputed that Petitioner has lived and worked in the United States for the past five years after DHS released him on an OREC in 2021. He has resided with his spouse and extended family, supported his U.S. citizen child economically and emotionally, and worked with valid employment authorization. (Dkt. # 11 at 11.) It is also undisputed that prior to his arrest, Petitioner did not receive written notice or an opportunity for a hearing before a neutral decisionmaker. Accordingly, Petitioner's liberty interest in remaining free is high, and the first *Mathews* factor favors Petitioner.

*2. Risk of Erroneous Deprivation and Value in Additional Safeguard*

The significant factual disputes demonstrate the high risk of erroneous deprivation in this case. Additional, pre-deprivation safeguards would have been valuable in reducing the likelihood that an erroneous deprivation occurred.

As a threshold matter, Petitioner asks the Court to strike the substantive portions of Respondents' declarations as inadmissible under the Federal Rules of Evidence. (Dkt. # 11 at 6-10.) Because the Court finds that the second *Mathews* factor weighs in Petitioner's favor even considering the disputed evidence, it need not reach this issue.

Respondents assert that Petitioner's case is distinct from other redetention matters because Petitioner's allegedly unauthorized relocation to Oregon was a "present violation on the day of arrest" and Petitioner had allegedly failed to report to ICE since November 3, 2023. (Dkt. # 6 at 8-9.) Respondents contend a pre-arrest hearing would not have altered the fact that

Petitioner living in Oregon without written permission was "a standing OREC violation" and thus the value of that additional safeguard is low. (Dkt. # 6 at 9.)

As noted, however, Petitioner disputes both of the alleged OREC violations. Petitioner provides two declarations declaring under penalty of perjury that he has never been to California, let alone been scheduled for and missed a check-in in San Diego. (Arias Decl., ¶ 6; Salcedo Decl., ¶ 4.) Although Respondents contend "ICE records show that Petitioner has not reported since November 2023," they are unable to cite to any evidence in the record to substantiate this assertion or that Petitioner was ever required to report in California. (Dkt. # 6 at 8.) As for his change of address, Petitioner asserts he was in Oregon temporarily for work, maintained his Kennewick address, and intended to return to Washington. (Arias Decl., ¶ 9.)

More importantly, contemporaneous DHS arrest records say nothing of these alleged OREC violations. The I-213 form documenting Petitioner's arrest, authored by an unidentified Deportation Officer, only asserts that Petitioner "stopped reporting after his check in on 11/03/2023." (Van Daley Decl., ¶ 2, Ex. 2 at 3.) The report does not allege that Petitioner failed to report to any check-in in California or update his address. Instead, it appears ICE agents took Petitioner into custody solely because "[i]mmigration databases confirmed that [Petitioner] was amendable to enforcement action." (*Id.*) Which immigration databases were queried, by whom, when, and what information was learned is neither documented in the I-213 nor explained by Respondents. These factual disputes demonstrate a high risk of error, emphasizing the value pre-deprivation process would have provided. As stated in *M.Z.H. v. Hermosillo*, "[t]he factual justification for Petitioner's detention should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court" and does not extinguish an individual's liberty interest. 2025 WL 3718655, at *5 (W.D. Wash. Sept. 23, 2025) (citing *Rodriguez Diaz v. Kaiser*, 2025

WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025)). Accordingly, the second *Mathews* factor favors Petitioner.

*3. Government Interest*

Finally, the Court considers the government's countervailing interests. There is no question that the government has legitimate interests in enforcing immigration laws, protecting the community, and ensuring a noncitizen's appearance for immigration proceedings. But here, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before revoking release would materially impede those interests. Respondents rely on Petitioner's alleged missed check-ins and presence in Oregon to substantiate their interest in avoiding leaving Petitioner "at large" while a pre-deprivation hearing was arranged. (Dkt. # 6 at 10.) Yet, the limited and disputed evidence only serves to undermine Respondents' factual basis for redetaining Petitioner. Petitioner was openly working under his valid work authorization on a temporary basis in Portland to economically provide for his spouse and child, undercutting Respondents' characterization of Petitioner as being "at large." (Arias Decl., ¶¶ 9-10.) Respondents point to no other evidence showing Petitioner was a flight risk or posed a danger to the community which would have arguably justified forgoing pre-deprivation process.

Custody and bond hearings are routine, and courts have found the incremental burden modest compared to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). On this record, the third *Mathews* factor also favors Petitioner.

Balancing the *Mathews* factors, the Court concludes that Respondents' redetention of Petitioner without first providing pre-deprivation process deprived him of a liberty interest in remaining free, that there was a high risk of erroneous deprivation, and there was value in

additional procedural safeguards. Further, Respondents have not articulated an interest that would have made such additional process impracticable. His redetention, therefore, was unlawful under the Due Process Clause of the Fifth Amendment and habeas relief is warranted.

Respondents suggest a bond hearing is the appropriate remedy for any "procedural deficiency" involving Petitioner's redetention. (*See* dkt. # 6 at 10 (citing *Balwan v. Bondi*, 2026 WL 497098, at *10 (W.D. Wash. Feb. 23, 2026)).) *Balwan* is distinguishable. In that case, the petitioner challenged his detention without a bond hearing as violative of § 1226(a). *Balwan*, 2026 WL 497098, at *3. Here, Petitioner is not raising a claim under his purported statutory detention authority, but rather the Fifth Amendment, challenging the circumstances of his redetention. (*See generally* dkt. # 1.) Courts in this District generally find that a post-deprivation hearing is not the appropriate remedy for a constitutionally deficient redetention because the hearing "occur[s] after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. -T.B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1138 (granting petitioner's motion for a temporary restraining order that challenged his redetention under *Mathews* and finding that "immediate release [wa]s necessary to restore the status quo ante litem") (emphasis in original). The Court similarly finds that restoring Petitioner to the status he held prior to his erroneous deprivation (*i.e.*, released in the United States and subject to reasonable conditions) is the appropriate remedy.

**C. Injunctive Relief**

Petitioner further seeks a permanent injunction barring any future redetention without notice and a hearing before a neutral decisionmaker prior to redetention. (Dkt. # 1 at 10.) A permanent injunction requires a "cognizable danger of recurrent violation," not just a past

violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026). The record shows no specific, real, and immediate threat that Petitioner will again be redetained without due process or in violation of applicable regulations. His request for permanent injunctive relief is therefore denied.

## IV. CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

a. Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

b. Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2) Petitioner's request for a permanent injunction (dkt. # 1) is DENIED.

(3) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

Dated this 17th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge